**UNITED STATES DISTRICT COURT FOR**
**THE NORTHERN DISTRICT OF FLORIDA**
**PENSACOLA DIVISION**


In re:  **JEFFREY DICKSTEIN**

                                                        **Misc. Case No.: 3:10mc63/MCR/EMT**


_____/


## NOTICE AND ORDER OF CRIMINAL CONTEMPT PROCEEDINGS

On August 31, 2008, attorney Jeffrey A. Dickstein filed a notice of appearance (doc.
43) on behalf of Claudia and Mark Hirmer in their criminal proceedings before this court.[1]
*See United States of America v. Claudia Constance Hirmer, Mark Steven Hirmer, et al.*,
Case No. 3:08cr79/MCR.  On September 23, 2008, this court issued a Standing Order and
Notice to Retained Criminal Defense Attorneys advising Dickstein of his obligation to
provide representation through the appellate stage of the case regardless of fee
arrangements.  (Doc. 124).  One week prior, the court also expressed to Dickstein it would
not accept a motion to withdraw based on fee concerns.  Dickstein thereafter represented
the Hirmers throughout months of pretrial preparation, including the review of voluminous
and electronically challenging discovery, followed by a four-week long trial in March 2010,
at the end of which the jury found both of the Hirmers guilty on all counts.[2]  Based on the
jury's verdict, the court ordered a presentence investigation for each of the Hirmers and

---

[1]  In August 2008, Mark and Claudia Hirmer were named in a fifteen count indictment and charged
with Conspiracy to Defraud the Internal Revenue Service and Commit Wire Fraud against the United States,
Conspiracy to Commit Money Laundering, Tax Evasion, and Wire Fraud.  On August 31, 2008, Jeffrey
Dickstein appeared on behalf of both defendants.  On September 16, 2008, the court conducted a hearing
on the matter of his joint representation of co-defendants, at the conclusion of which the court accepted the
defendants knowing, intelligent, and voluntary waiver of conflict-free counsel.  *See United States v. Garcia*,
447 F.3d 1327, 1337 (11th Cir. 2006).

[2]  The government dismissed the wire fraud counts before trial.  Additionally, Dickstein appeared on
the Hirmers behalf at a hearing on an Emergency Motion For Reconsideration of Bail Denial Pending
Sentencing conducted two days after the jury's verdict was returned.

scheduled their sentencing hearings for July 30, 2010.  On April 26, 2010, one month after the guilty verdicts, Dickstein filed a Motion to Withdraw as Attorney for Claudia Hirmer and Mark Hirmer, citing personal financial difficulties and his clients' failure to pay his attorney's fees.  (Doc. 1192).  In an effort to preserve the Hirmers' right to competent counsel and a sentencing hearing without unreasonable delay, the court appointed Dickstein as CJA counsel for the Hirmers based on its knowledge of the Hirmers' financial status post-trial. (Doc. 1217).   In response, Dickstein notified the court of his refusal to accept the CJA appointment and, during a hearing, emphasized his intention to cease representation notwithstanding the court's prior Standing Order and its verbal admonishments.

The Eleventh Circuit has "uniformly regarded the imposition of a penalty against attorneys for a punitive purpose as a criminal contempt sanction."  *United States v. KS & W Offshore Eng'g, Inc.*, 932 F.2d 906, 908 (11th Cir. 1991) (internal marks omitted). Because criminal contempt proceedings are indeed criminal, one charged with criminal contempt is entitled to the same constitutional protections due in all criminal proceedings.[3] *See Int'l Union, United Mine Workers of Am. v. Bagwell*, 512 U.S. 821, 826-27 (1994). Thus, "[i]n proceedings for criminal contempt the defendant is presumed to be innocent, he must be proved to be guilty beyond a reasonable doubt, and cannot be compelled to testify against himself."  *Romero v. Drummond Co.*, 480 F.3d 1234, 1243 (11th Cir. 2007) (quoting *Gompers v. Buck's Stove & Range Co.*, 221 U.S. 418, 444 (1911)) (internal marks omitted).  In the Eleventh Circuit, to establish criminal contempt, the government must prove beyond a reasonable doubt that a reasonably specific order was violated and that the violation was willful.  *See United States v. Bernardine*, 237 F.3d 1279, 1282 (11th Cir. 2001).

Although the undersigned recognizes that the contempt power is subject to abuse and thus should be utilized sparingly by judges, the court cannot ignore an attorney's flagrant disregard of its orders, particularly when that disregard negatively impacts his clients, both of whom are criminal defendants in this court.  Therefore, pursuant to its inherent and statutory contempt power, this court hereby *sua sponte* initiates criminal

---

[3]  The court may try criminal contempt without a jury when the actual penalty imposed does not exceed six months imprisonment.  *See Taylor v. Hayes*, 418 U.S. 488, 495 (1974).

contempt proceedings against Jeffrey Dickstein for willfully violating the court's Standing Order and Notice to Retained Criminal Defense Attorneys and its verbal order in open court on September 16, 2009, advising him that he would be required to represent the Hirmers, even if they could not pay his fees.  *See* 18 U.S.C. § 401(3); Fed. R. Crim. P. 42(a).

As required by Rule 42(a)(1)(C) of the Federal Rules of Criminal Procedure, the court now gives notice of the essential facts constituting the criminal contempt:

1.      Dickstein initially appeared provisionally on behalf of the Hirmers on August 31, 2008, noting that the Hirmers' funds were subject to forfeiture due to the criminal charges and unless alternate financing was available, he would not represent the Hirmers for more than seven days after the arraignment on September 2, 2008.  (Doc. 43.)

2.      On September 8, 2008, in a Motion to Continue Trial, Dickstein wrote that, "While Dickstein has agreed to represent the Hirmers, it is unlikely that he will receive much, if any, compensation until such time as the trial is completed, and only if the Hirmers are acquitted of Count 2, the conspiracy to commit money laundering count."  (Doc. 58.)

3.      On September 16, 2008, during a hearing on the Motion to Continue Trial, Dickstein again reiterated his concern that his clients did not have the funds to review and prepare a defense regarding approximately 250 gigabytes of electronic discovery material. In response, the undersigned informed Dickstein that "your clients may never have the funds available to them to prepare the type of defense that you would like to prepare" and that the availability of any funding would not "dictate when this case gets set for trial." (Doc. 1325, at 18-19.)

4.      During the same hearing, the undersigned engaged Dickstein regarding his representation and his clients' possible lack of sufficient funds to pay his attorney's fees. (Doc. 1325, at 20.)   When Dickstein affirmed that he had unconditionally agreed to represent the Hirmers, the court followed up, "But you anticipate not being paid or perhaps not being paid for this representation; is that correct."  Dickstein responded, "Unfortunately, yes."   The undersigned then emphasized, "With that understanding, I'm sure you can appreciate, the Court is not going to entertain a motion to withdraw, you have that understanding, you [were] knowledgeable about their financial circumstances at the time you agreed to represent them.  I'm not going to entertain a motion to withdraw based on

lack of compensation."  The undersigned emphasized to Dickstein that he was "on the hook as far as this Court is concerned in terms of representing these defendants." Dickstein acknowledged that he understood.  (Doc. 1325, at 20-21.)

5.     Following the hearing, the court learned that its Standing Order and Notice to Retained Criminal Defense Attorneys was inadvertently overlooked at the time of arraignment and not posted on the court's electronic docket.  Therefore, on September 23, 2008, the court issued its Standing Order and Notice to Retained Criminal Defense Attorneys, advising Dickstein (the only retained criminal defense attorney in the case) of his obligation to provide representation to the Hirmers through the appellate stage of the case regardless of fee arrangements.  (Doc. 124.)  Thus, notwithstanding its prior admonishment in court, under the standing order, Dickstein technically still had another seven days to withdraw based on fee concerns.

6.     On November 17, 2008, Dickstein filed a Notice of Continued Representation indicating his intent to continue representing the Hirmers.  (Doc. 220.)

7.     On January 4, 2009, before trial, Dickstein filed a motion to dismiss two counts of the indictment on grounds that the Sixteenth Amendment was never ratified by the states and thus is unconstitutional.  (Doc. 305).  Following this court's denial of the motion, Dickstein sought a writ of mandamus from the Eleventh Circuit.  After the writ was denied by the Eleventh Circuit, Dickstein sought certiorari from the United States Supreme Court, which was also denied.  The court notes the following in connection with Dickstein's pursuit of this challenge:

  a.     Dickstein's attorney time records reveal that he accrued approximately $55,000 in attorney's fees pursuing this defense, a defense which could have been on direct appeal .  (*See* doc. 1207.)

  b.     In 1987, the Eleventh Circuit characterized a challenge to the constitutionality of the Sixteenth Amendment as "frivolous."  *See Pollard v. Commissioner, IRS*, 816 F.2d 603, 604 (11th Cir. 1987).

  c.     Dickstein has been admonished previously for pursuing this frivolous claim.  *See United States v. Benson*, 561 F.3d 718, 723 (7th Cir. 2009) (quoting an earlier case denying Dickstein's client's criminal

appeal noting that "one would think this repeated rejection of Benson's Sixteenth Amendment argument would put the matter to rest"); *United States v. Benson*, 941 F.2d 598, 607 (7th Cir. 1991) (noting that Dickstein's client's Sixteenth Amendment constitutionality challenge was already "beyond review"); *United States v. Collins*, 920 F.2d 619, 629 (10th Cir. 1990) (noting that Dickstein's arguments disregard "uniform contrary authority"), *cert. denied*, 500 U.S. 920 (1991).[4]

---

[4] On February 4, 2010, in response to a motion in limine from the government to exclude tax defier evidence, Dickstein advised the court of a "commission of a felony by the members of the prosecution team" in conspiring to prevent his clients from testifying and presenting a defense regarding their view that the 16th Amendment is unconstitutional.  (Doc. 788).  Dickstein went on to note that "the failure of the Court to remain neutral under the facts and circumstances of this case could only lead to the conclusion that the Court is part of the conspiracy to prevent the Hirmers from presenting testimony and defense on the merits of the issues," going so far as to suggest that by granting the government's motion in limine and preventing the Hirmers from testifying to their views on the 16th Amendment at trial the undersigned would be complicit in the felony.  (Doc. 788.)

The court notes that Dickstein has previously been sanctioned in federal courts of the Ninth and Tenth Circuits.  In 1986, Dickstein's *pro hac vice* admission to the District of Alaska was revoked after local counsel refused to assume responsibility for Dickstein's pleadings.  *See Donnell v. United States*, No. A84-416 Civil (D.Alaska Jan. 16, 1986) (unpublished), *as discussed in United States v. Collins*, 920 F.2d 619, 623 n.2 (10th Cir. 1990), *cert. denied*, 500 U.S. 920 (1991).  The following year, in 1987, Dickstein represented a defendant in a five-day trial then withdrew as counsel before sentencing.  Despite repeated violations and warnings from the court, Dickstein was not held in contempt during the trial.  After the trial and at the government's behest, the court held a hearing to determine whether to revoke Dickstein's *pro hac vice* admission.  The court revoked his status and formally censured him for his behavior during trial and his failure to appear at the sanction hearing.  The Ninth Circuit upheld the penalty.  *See United States v. Summet*, 862 F.2d 784 (9th Cir. 1988).  Based on his behavior in *Summet*, the United States District Court for the District of Nevada denied Dickstein's application for *pro hac vice* admission.  After the denial, Dickstein remained in the courtroom and continued to disrupt proceedings over the court's admonishments until he was eventually ejected by the United States Marshal.  *See Nutter v. United States*, No. CV-88-17-PMB (D.Nev. Jan. 21, 1988) (unpublished), *as discussed in United States v. Collins*, 920 F.2d 619, 623 n.2 (10th Cir. 1990), *cert. denied*, 500 U.S. 920 (1991).  In 1989, while Dickstein was representing a tax protestor, his initial filings in the district court included an 84 page motion to dismiss "lavishly larded with citations to the Declaration of Independence, colonial history and a plethora of nineteenth century Supreme Court cases."  *See Collins*, 920 F.2d at 623.  The district court characterized Dickstein's motions as evincing "a tactic of obfuscation and waste" and ordered Dickstein to show cause why his *pro hac vice* admission should not be revoked.  *Id.*  Dickstein responded by restating his legal arguments and demanding the judge's recusal.  The court revoked his admission and removed him from the case, and the circuit court upheld the removal.  *See id.*  In 1995, the Tenth Circuit upheld the revocation of Dickstein's *pro hac vice* admission by the district court.  After a mistrial and without a hearing, the district court revoked admission because of conduct "unprofessional and obstructive of the judicial process" including informing the jury it was not compelled to follow the law given by the court and smiling and shaking his head at adverse rulings.  *See United States v. Holland*, No. 94-5234, 1995 WL 539589, at *1 (10th Cir. Sept. 11, 1995).  In 1996, the United States District Court for the District of Kansas revoked Dickstein's *pro hac vice* admission because Dickstein omitted his previously revoked admissions and formal censure from his application affidavit.  The court, after a hearing before the magistrate judge and a government motion

8.      At   the April 2, 2010, hearing on the Hirmers' Emergency Motion for Reconsideration of Bail Denial Pending Sentencing, the evidence showed that Dickstein had been paid approximately $122,500 in connection with his representation of the Hirmers.  Dickstein's submissions in support of his motion to withdraw, filed on April 29, 2010, show that he has been paid $146,219.06 in fees and costs, and that the sum of $308,210.67 remains unpaid.  (Doc. 1207.)

9.      On April 26, 2010, Dickstein filed a Motion to Withdraw as Counsel, citing financial struggles, which he blamed on the Hirmers for their failure to pay his fees.[5] (Doc. 1192.)  Solely in an effort to preserve the Hirmers' right to competent representation at sentencing and a sentencing hearing without unreasonable delay, the court appointed Dickstein as CJA counsel.[6]  (Doc. 1217.)  On May 17, 2010, Dickstein filed a Motion for Reconsideration, again noting financial difficulties, arguing for the first time that his clients had accused him of unethical conduct during his representation,[7] there was a purported conflict of interest[8] and, because of previous payments from his clients, he would not be paid through a CJA appointment.  (Doc. 1224.)  The motion also stated that "Dickstein can

requesting revocation, found that "Dickstein's omissions and misstatements in his affidavit and his responses to the magistrate judge were materially misleading" and that the court would not have granted admission with knowledge of the prior sanctions.  *See United States v. Howell*, 936 F. Supp. 767, 774 (D. Kan. 1996).

[5] Dickstein initially maintained he was unable to pay for rent, food, utility, and other bills; and that he was vacating his home.  He also contended that he did not have sufficient funds to travel to attend the sentencing hearing or to pay the filing fee to perfect an appeal.  In his motion for reconsideration, Dickstein also claimed he was unable to pay his state and federal taxes because he was planning to use his trial fee to make those payments.  He complained he was subject to IRS penalties and that his credit report had been ruined.  At the hearing on his motion for reconsideration, Dickstein indicated that his credit card was in default.

[6] The undersigned was keenly aware of how difficult it would be to find separate attorneys to accept representation of the  Hirmers, given the complexity of the charges and the extensive trial record, as well as an impending sentencing hearing.  Each faces a lengthy term of imprisonment.

[7] Dickstein alleged that the Hirmers accused Dickstein of providing an inadequate closing argument and failing to provide adequate representation due to the consumption of alcohol during trial.

[8] Dickstein wrote that he represented the Hirmers as well as co-defendants Dover Perry and Michael Leonard in a civil action predating the criminal case, *United States v. PQI*. 3:08cv136 (N.D. Fla.).  After the criminal convictions in this case, the government indicated that it would discuss settlement with the civil defendants as part of its pre-sentencing negotiations.  Dickstein argued that he had a conflict of interest with the Hirmers and with Perry and Leonard, noting that he cannot represent their settlement interests in the civil case with them as part of the pre-sentencing in the criminal case. The court need not address the merits of this argument at this time.

categorically represent to the Court he no longer has the best interest of the Hirmers at heart, and is now spiritually, emotionally, and physically incapable of providing adequate representation, and is unwilling to do so."  (Doc. 1224.)

10.     This court held a hearing on Dickstein's motion for reconsideration on June 3, 2010, at which Dickstein, who joined by telephone claiming he could not afford to travel to the court to attend in person, indicated he would not accept the court's appointment.

11.     At the hearing, when asked whether they intended to obtain new counsel, Claudia Hirmer replied, "I don't think it's fair that we're in this position."  (Doc. 1334 at 9.) When asked whether she wanted Dickstein as her attorney, Claudia  Hirmer continued, "No. He said he doesn't have our best interest at heart anymore.  How can we have an attorney that doesn't care about our position anymore?"  When the undersigned told Claudia Hirmer that she had not requested Dickstein be removed from the case, she replied, "We haven't had counsel.  He abandoned us."  The undersigned notes that Ms. Hirmer was visibly distressed over the situation.  (Doc. 1334 at 9.)

12.     Based on Dickstein's unequivocal refusal to continue representing the Hirmers and the court's need to find substitute counsel as soon as possible, the court concluded it had no choice but to grant the motion to withdraw.[9]  The withdrawal has delayed sentencing proceedings by seven weeks.

Accordingly, it is hereby **ORDERED**:

1.     Jeffrey A. Dickstein is required to appear before the court on a charge of criminal contempt at 9:00 a.m. on September 29, 2010, pursuant to 18 U.S.C. 401(3) and Fed. R. Crim. P. 42(a).[10]  The trial will be held in Courtroom 4 North, United States District

---

[9] Regardless of the phraseology used, the court's intention at the time was to remove Dickstein from the case.  Certainly, the court could have denied the motion to withdraw and waited to see whether Dickstein would have represented the Hirmers during the presentence investigation and appeared at sentencing; however, based on Dickstein's unequivocal refusal to continue representing the Hirmers, this undoubtedly would have worked only to the Hirmers' disadvantage.  As it stands, the Federal Defenders Office had difficulty finding CJA counsel to represent the Hirmers because the local CJA panel had been exhausted as a result of other attorney appointments in the case.  Eventually, counsel was located in Tallahassee, 200 miles away.  The Hirmers' sentencings are now scheduled for September 17, 2010, seven weeks after their original date.  The Hirmers continue to remain in custody in the county jail.

[10] By the time of the contempt trial, all defendants in this case should have been sentenced, and, thus, the court's jurisdiction suspended, at least until all appeals are concluded.  Nonetheless, "the Supreme Court has specifically held that '[a] court may make an adjudication of contempt and impose a contempt

Court for the Northern District of Florida, Pensacola Division, located on One North Palafox Street, Pensacola, Florida 32502.

2.      Jeffrey A. Dickstein has the right to the representation of counsel, the presumption of innocence, the privilege against self incrimination, to prepare a defense and to present witnesses, and to proof of guilt beyond a reasonable doubt before any criminal sanction may be imposed.

3.      Jeffery A. Dickstein must notify the court within seven calendar days of service of this order if he desires court appointed counsel.  If court-appointed counsel is requested, Dickstein will be required to provide the requisite financial information for the court to make a determination of his right to such appointment.

4.      The court hereby requests that this matter be prosecuted by the United States Attorney's Office for this district.  *See* Fed. R. Crim. P. 42(a)(2).  Unless this request is declined in writing by that office by August 25, 2010, the court so appoints the United States Attorney's Office to prosecute the contempt.

5.      This matter will be tried to the court.

6.      The clerk shall issue a summons and forward a copy of this order to the United States Marshal Service for prompt service on Jeffrey A. Dickstein, at the address listed in the attached sealed document, or wherever he may be located.

7.      The clerk shall provide a copy of this order to The State Bar of California, The State Bar of Wisconsin, the Oklahoma Bar Association, and to Claudia and Mark Hirmer, a the addresses listed in the attached sealed document.

     **DONE AND ORDERED** this 18th day of August, 2010.


          s/ *M. Casey Rodgers*
          **M. CASEY RODGERS**
          **UNITED STATES DISTRICT JUDGE**

---

sanction even after the action in which the contempt arose has been terminated.'" *Bush Ranch, Inc. v. E.I. DuPont de Nemours & Co.* (*In re E.I. DuPont de Nemours & Co.-Benlate Litig.*), 99 F.3d 363, 368 (11th Cir. 1996) (quoting *Cooter & Gell v. Hartmarx Corp.*, 496 U.S. 384, 396 (1990)) (alteration in original), *cert. denied*, 522 U.S. 906 (1997).